## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT LEE RUSZKOWSKI, JR., DANA RENEE GRIFFITH, and JILL KATHLEEN KING, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18-CV-5754 |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| DALE JAMES MORGADO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiffs ROBERT LEE RUSZKOWSKI, JR., DANA RENEE GRIFFITH, and JILL KATHLEEN KING, by and through their attorneys, Actuate Law LLC, complain against DALE JAMES MORGADO as follows:

## NATURE OF ACTION

1.     This action arises from Defendant DALE JAMES MORGADO's ("Morgado") negligence and legal malpractice in his representation of Plaintiffs. Plaintiffs hired Morgado as their attorney to resolve a dispute regarding their late mother's pension benefits. As part of his representation, Morgado filed a complaint in the District Court of Connecticut. That complaint was dismissed because Morgado failed to respond to a motion to dismiss, failed to meet and confer with the defendant pursuant to Federal Rule of Civil Procedure 26(f), failed to appear for a pretrial conference, and failed to meet the court's deadlines. Despite the fact that an order to show cause was entered against him, he failed to represent Plaintiffs and directly caused their complaint to be dismissed.

2. At the same time, the defendant in the federal case filed suits against each of the Plaintiffs in their respective states of residency. Morgado misrepresented that he could practice in Illinois, North Carolina, and Colorado (the three states where claims were filed against Plaintiffs), when he was not licensed to practice in any of those states. He further misled Plaintiffs to believe that he had filed his appearances and was moving to consolidate the three state cases into the federal case in Connecticut. Based solely on Morgado's misrepresentations, Plaintiffs did not appear in response to the state complaints against them. When default judgments were entered against each of the Plaintiffs, Morgado negligently told them that they did not need to appear and that he was filing an "injunction" to consolidate the state cases. When Plaintiffs further discovered that contempt orders and arrest warrants had been issued against one of the Plaintiffs for their failure to appear at post-judgment proceedings, Morgado again told them they did not need to appear.

3. As these cases proceeded, Morgado was in communication with Plaintiffs and had every opportunity to tell them that motions to dismiss had been filed, motions for default judgment had been filed, their federal complaint had been dismissed, default judgments had been entered against each of them, and contempt orders and arrest warrants had been issued against two of the Plaintiffs. Morgado never disclosed any of this information, and instead kept up the façade that he was representing them in all four cases and was moving to consolidate or settle the cases with opposing counsel.

4. Morgado billed Plaintiffs for his fees and expenses relating to his alleged representations of them in each of these cases, even requesting fees for appearances that he never filed and for trips he never made.

5.      Morgado's conduct directly and proximately caused:

(a)      The federal complaint to be dismissed;

(b)      Default judgments to be entered against each of the Plaintiffs;

(c)      Contempt Orders to be entered against each of the Plaintiffs;

(d)      Arrest warrants to be issued against two of the Plaintiffs;

(e)      Plaintiffs to pay for services that were never performed and fees that were never incurred;

(f)      Plaintiffs to hire new counsel in an attempt to quash and vacate the contempt orders and arrest warrants, to move to set aside the default judgments, and to move to restrain a threatened sheriff auction of one of the Plaintiff's houses.

Plaintiffs have evidence that would have allowed them to prevail on their declaratory judgment claim in federal court and to prevail in the individual state cases brought against them. But for Morgado's negligent conduct, Plaintiffs would have won their declaratory judgment claim, Plaintiffs would not have default judgments entered against them, and Plaintiffs would not have had to hire and pay new counsel.

Solely because of Morgado's negligent conduct, Plaintiffs now seek to hold him accountable for his legal malpractice and recoup the damages he has caused.

## **PARTIES**

6.      ROBERT LEE RUSZKOWSKI, JR. ("Mr. Ruszkowski") is a resident of Glenview, Illinois, the son of Kathleen Ruszkowski, and the brother of Dana Renee Griffith and Jill Kathleen King.

7.      DANA RENEE GRIFFITH ("Dr. Griffith") is a resident of Apex, North Carolina, the daughter of Kathleen Ruszkowski, and the sister of Robert Ruszkowski, Jr. and Jill Kathleen King.

8.     JILL KATHLEEN KING ("Ms. King") is a resident of Denver, Colorado, the daughter of Kathleen Ruszkowski, and the sister of Robert Ruszkowski, Jr. and Dana Renee Griffith.

9.     DALE JAMES MORGADO ("Morgado") is an attorney who is/was licensed to practice in Connecticut, New York, and Florida.

## VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship: Mr. Ruszkowski is a resident of Illinois; Dr. Griffith is a resident of North Carolina; Ms. King is a resident of Colorado; and Morgado is a resident and was licensed to practice in either Connecticut, Florida, or New York. The matter in controversy, including legal fees paid to Morgado and paid to new counsel as a direct consequence of Morgado's conduct, exceeds $75,000, exclusive of interest and costs.

11.     Venue is proper in this Court because Mr. Ruszkowski is a resident of Illinois and Morgado held himself out as licensed to practice law in Illinois and was paid fees to file an appearance as an attorney in Illinois.

## FACTUAL BACKGROUND

12.     Plaintiffs are siblings. Their mother, Kathleen Ruszkowski worked as a nurse for the City of Stamford. She was a member of the City of Stamford Registered Nurses Local 465 of Council #4 and a participant in the Stamford Classified Employees' Retirement Plan.

13.     Kathleen Ruszkowski named her three children – Plaintiffs – as beneficiaries to her retirement plan.

14.     After Kathleen Ruszkowski was diagnosed with lung cancer, she retired from her position as a nurse for the City of Stamford with a disability pension on September 24, 2007. Within five months of her retirement, Kathleen Ruszkowski passed away from lung cancer.

15.     After her passing, the City of Stamford made pension payments to each of the Plaintiffs.

16.     Years later, in 2016, the City of Stamford sent a letter to each of the Plaintiffs stating that the City had erroneously made extra pension payments to each of the Plaintiffs and were demanding repayment of the extra payments.

17.     In response to the City of Stamford's collection efforts, Plaintiffs engaged and hired Dale James Morgado to resolve the dispute with the City of Stamford regarding the alleged excess pension payments.

## **Dale Morgado**

18.     Morgado was admitted to practice law in Connecticut on November 5, 2007.

19.     Morgado was admitted to practice law in Florida on April 16, 2009.

20.     Morgado was admitted to practice law in New York on March 11, 2014.

21.     Morgado was never licensed to practice law in Illinois.

22.     Morgado was never licensed to practice law in North Carolina.

23.     Morgado was never licensed to practice law in Colorado.

## **The District Court of Connecticut Case**

24.     On November 30, 2016, Morgado filed a complaint in the District Court of Connecticut on behalf of Plaintiffs. The Complaint sought a declaratory judgment that all monies paid by the City of Stamford to Plaintiffs belonged to Plaintiffs free and clear of any claims or interferences by the City of Stamford.

25. After filing the Complaint (and Amended Complaint on the same day), Morgado did not appear or file anything in this case until a Rule to Show Cause had been entered by the court. *See* Case No. 16-CV-01953-SRU Docket, attached hereto as Exhibit 1.

26. On March 27, 2017, the City of Stamford filed a motion to dismiss. The response to the City's motion to dismiss was due on April 17, 2017.

27. On March 31, 2017, the court entered an order requiring a joint status report pursuant to Federal Rule of Civil Procedure 26(f) to be filed with the court within two weeks. Morgado never conferred with counsel for the defendants and never field a joint status report.

28. On April 17, 2017, the court set a pretrial conference for April 25, 2017. Morgado did not appear for the April 25, 2017 pretrial conference. That same day, the court entered an order to show cause, stating that: (i) Plaintiffs' counsel failed to appear for the Federal Rule of Civil Procedure 16 pretrial conference; (ii) Plaintiffs' counsel failed to confer with opposing counsel regarding the Federal Rule of Civil Procedure 26(f) status report; and (iii) Plaintiffs' counsel failed to serve all defendants within ninety days of the complaint being filed.

29. One month later, Morgado filed a response to the Order to Show Cause, citing his unexpected poor health as the reason for his failing to meet court deadlines and advance the case.

30. Instead of informing his clients that an order to show cause had been entered or that he needed to file a response, Morgado left his clients in the dark. Morgado sent the message below on the same day he filed the response to the order to show cause.

| May 25, 2017 | Email from Ruszkowski to Morgado (Exhibit 2):<br><br>"Should we have an update call? It sounded like there are things we need to discuss. I have no idea what is going on.<br><br>Morgado responded:<br><br>"We certainly can, but to save you the suspense, it is business as usual, so nothing strange or out of the ordinary to fill you in on. I did put together an online booking site so you find a time that works for you and schedule a time to confer as you wish…." |
|---|---|

31.     On July 27, 2017, the Board of Trustees of the Classified Employees Retirement Fund filed a motion to dismiss the complaint. The response to the motion to dismiss was due on August 17, 2017. Morgado never filed a response to this motion to dismiss and never filed a request for an extension.

32.     On September 1, 2017, the court entered an order stating that the Board of Trustees' motion to dismiss would be granted unless Plaintiffs responded by September 8, 2017. September 8, 2017 came and went, and Morgado did not file a response to the motion to dismiss.

33.     On September 12, 2017, the court entered an order granting the Board of Trustees' motion to dismiss. Seven days later, the court entered another order granting the City of Stamford's motion to dismiss and closing the case.

34.     The last filing or representation made to the court in this matter by Morgado was his response to the order to show cause on May 25, 2017.

35.     During this time period, November 30, 2016 to September 12, 2017 Morgado was in communication with Plaintiffs via email and phone calls. Nevertheless, Morgado did not disclose that an order to show cause had been filed in this case based on his failure to meet deadlines set by the court and the Federal Rules of Civil Procedure. Morgado did not disclose that

he had failed to file a response to a motion to dismiss. Morgado did not disclose that the case had been dismissed. Morgado never stated that he was having health issues, and conversely Morgado continued to bill Plaintiffs for his alleged services.

36.     Plaintiffs' District Court of Connecticut action was dismissed solely because Morgado failed to file pleadings, appear for hearings, and meet the court deadlines.

37.     Plaintiffs had evidence that would have allowed them to prevail on their declaratory judgment claim. But for Morgado's negligent conduct, Plaintiffs would have prevailed on their claim for declaratory judgment.

### The State Cases

38.     Shortly after Plaintiffs filed their declaratory judgment action in the District Court of Connecticut, the City of Stamford and the Board of Trustees filed a complaint against each of the Plaintiffs in their states of residency.

39.     On December 13, 2016, the City of Stamford and the Board of Trustees of the Classified Employees Retirement Fund filed suit against Mr. Ruszkowski in the Circuit Court of Cook County.

40.     On January 3, 2017, the City of Stamford, Classified Employee Retirement Fund filed suit against Dr. Griffith in the General Court of Justice, Superior Court Division in North Carolina.

41.     On January 12, 2017, the City of Stamford filed suit against Ms. King in the District Court, City & County of Denver, Colorado.

42.     In each of the "State Cases," the City of Stamford sought to recoup some of the pension payments made to the Plaintiffs, which they said were made by the City erroneously and by accident.

43.     After receiving service of the State Cases, Plaintiffs promptly notified Morgado that they had been sued and served in their respective states of residency. For example, Mr. Ruszkowski was not served with notice of the underlying complaint until February 7, 2017. He contacted Morgado the next day to let him know that he had been served.

44.     In their conversations with Morgado after Plaintiffs received notice of the State Cases, Morgado explained that he would represent them in the State Cases and move to consolidate the three State Cases (against each of the Ruszkowski siblings) into the federal action that was already proceeding in the District Court of Connecticut.

45.     Morgado never told any of the Plaintiffs that he was not licensed to practice law in Illinois, North Carolina, or Colorado.

46.     Morgado never suggested to or informed Plaintiffs that they needed to hire local counsel.

47.     Instead, Morgado explicitly stated that he would be filing appearances on behalf of each of the Plaintiffs in the State Cases.

48.     Despite the fact that he never filed his appearance in any of the State Cases, Morgado represented to Mr. Ruszkowski that he would need $250 per case to appear in each of the state actions.

| March 28, 2017 | Email from Morgado to Ruszkowski (Exhibit 3) |
| --- | --- |
| | "Here is the wiring information to send the $750 ($250 x 3) to permit and pay for me to appear in your three other cases. Can you kindly wire that today? Thanks Rob. – DJM" |

49.     Morgado wrote later on March 28, 2017 to confirm the amount owed for him to file appearances in each of the State Cases: "Okay, it is the same fee across the board per case,

regardless of the state, i.e., $250 per case, so $750 altogether." March 28, 2017 email, attached hereto as Exhibit 4.

50.     The Plaintiffs paid $750 to Morgado to file his appearances in each of the State Cases. Morgado received the money, but never filed his appearances.

51.     Based on Morgado's representation that he would be consolidating the State Cases into the federal case and that they did not need to respond or appear in the State Cases, none of the Plaintiffs appeared in response to the respective complaints.

52.     Ruszkowski, on behalf of himself and his sisters, followed up with Morgado several times to determine if Morgado had consolidated the State Cases into the federal action:

| February 21, 2017 | Email from Ruszkowski to Morgado (Exhibit 5) "Also, did we ever hear back definitively about consolidating the cases from the NC, CO, and IL attorneys?" |
|---|---|
| March 10, 2017 | Email from Ruszkowski to Morgado (Exhibit 6) "As an update, have the individual summons/cases against Dana, Jill, and me been successfully consolidated into the other case?" |

53.     Morgado did not respond to these emails and requests for information.

54.     Because Morgado failed to file an appearance, hire local counsel, or respond to the State Case complaints, motions for default judgment were filed in each of the State Cases against each of the Plaintiffs.

55.     Morgado never told any of the Plaintiffs that a motion for default judgment had been filed against them.

56.     Morgado never responded to the motions for default judgment on behalf of any of the Plaintiffs.

10

57. Instead, Morgado continued to represent the fact that he was consolidating the State Cases into the federal case.

58. In response to Morgado's request for payment of the $750 appearance filing fee, Mr. Ruszkowski asked:

| March 28, 2017 | Email from Ruszkowski to Morgado (Exhibit 4) (emphasis added)<br><br>"My only question is around the reference to appearing in the three other states. **Does that mean the individual cases against us are not yet consolidated into the single case?** If so, do we need to do anything about that now?"<br><br>Morgado responded:<br><br>"to answer your question no they are not yet consolidated, that is what I intend to do today, as in right now, I was literally looking up the fees per court to accomplish this task so I can send you the itemized costs and have you wire it over. . . . In either scenario with their cooperation or not, today is a good day to do it and all part of my tractor trailer[sic] down the highway strategy. I'll finish adding up the court fees and email you right back." |
|---|---|

59. Default Judgments were entered in each of the State Cases against Plaintiffs because Morgado failed to file an appearance, failed to hire local counsel, failed to respond to the Complaints, and failed to respond to the motions for default judgment.

60. Morgado further did not tell any of his clients that default judgments had been entered against them. For example, an email chain three days after the default judgment was entered against Mr. Ruszkowski mentions nothing about the default judgment. *See* April 28, 2017 Email, attached hereto as Exhibit 7. And, the aforementioned email chain, in which Mr. Ruszkowski asks for a case update and Morgado states: "We certainly can, but to save you the

suspense, it is business as usual, so nothing strange or out of the ordinary to fill you in on" is a month after the default judgment was entered," was sent one month after the default judgment was entered against Mr. Ruszkowski. May 25, 2017 Email, attached hereto as Exhibit 8.

61.     When the default judgments were entered, Plaintiffs were all under the impression that Morgado had filed his appearance, was representing them in the underlying actions, and was working to consolidate the cases.

62.     This façade did not stop here. After the default judgments were entered, Mr. Ruszkowski and Ms. King received citations to discover assets as part of the post-judgment proceedings.

63.     Mr. Ruszkowski again promptly notified Morgado, who responded by telling Mr. Ruszkowski not to worry about it and that he would file a motion to handle the issue:

| July 2, 2017 | Email from Ruszkowski to Morgado (Exhibit 9)<br><br>"I actually got my own papers this morning (and on a Sunday). I have uploaded them to the portal. The file name is Scan2017 2-7 something or other. It is called "Citation to Discover Assets" and other papers. I've also attached it here. This does seem to be getting a little ridiculous that this keeps happening when supposedly it shouldn't be. Let me know what I need to do. Please also let us know what you plan to do and what the results end up being. This of course make us a little anxious." |
|---|---|
| July 3, 2017 | Email from Morgado to Ruszkowski (Exhibit 9)<br><br>"Thanks Rob. I'll break down the steps for you that make up the plan in the next two days. In short, however, we will be filings a motion concerning what you attached this week though. I'll send you a copy for that too for you[r][sic] files." |

| July 5, 2017 | Email from Ruszkowski to Morgado (Exhibit 9)<br><br>"Thanks again Dale for jumping on this. Just wondering if there is an update yet." |
|---|---|
| July 6, 2017 | Email from Morgado to Ruszkowski (Exhibit 10)<br><br>"Responding to your email from yesterday afternoon, I haven't posted an update yet just waiting for the clerk to respond to confirm. I will check it soon as I get back to my office and out of this traffic. And I will follow up with you later tonight after dinner time." |
| July 7, 2017 | Email from Ruszkowski to Morgado (Exhibit 10)<br><br>"Just out of curiosity, what is the clerk going to discuss with you? Am I going to have to appear at the court date indicated on the papers I received?" |
| July 9, 2017 | Email from Ruszkowski to Morgado (Exhibit 11)<br><br>"I am getting nervous about this upcoming court appearance required in the papers I received. I need to know if I will actually need to go to it so I can make appropriate arrangements. Please let me know." |
| July 11, 2017 | Email from Ruszkowski to Morgado (Exhibit 12) (emphasis added)<br><br>"I am getting very nervous about the status of our case and the papers I received. I don't know what is going on and whether I need to appear in court in a couple of weeks. Please call me at 312.860-5661."<br><br>Morgado responded:<br><br>"That is something they send out automatically. **You won't be attending or need to go. Don't be nervous.** I'll call you after my deposition today."<br><br>Ruszkowski responded:<br><br>"Thanks for the reassurance Dale. Let me know when you expect to call so I can make sure I don't miss it." |

13

64. Based on Morgado's advice that Mr. Ruszkowski did not need to appear, Mr. Ruszkowski did not appear in response to the citation to discover assets. After this exchange, Mr. Ruszkowski repeatedly requested to discuss the status of the State Cases with Morgado. He specifically requested to see documentation that none of the Plaintiffs needed to appear.

| July 12, 2017 | Email from Ruszkowski to Morgado (Exhibit 13)<br><br>"Are you able to talk quickly today?" |
|---|---|
| July 13, 2017 | Email from Ruszkowski to Morgado (Exhibit 13)<br><br>"I'd really like to discuss this issue quickly. You mentioned you would provide documentation that this has been resolved, but we haven't seen anything yet. Let me know." |
| July 14, 2017 | Email from Ruszkowski to Morgado (Exhibit 14)<br><br>"I don't get it, am I that unimportant? We have been receiving very threatening letters and the only thing we have heard from you is 'don't worry about it.' You promise that we will see documentation that it is resolved and nothing materializes. My letter literally says I can be arrested if I don't show up in court. How can you realistically expect me to ignore that based on what you have given me? I really need to talk to you about this. I have an incredibly high level of stress that is exacerbated by the fact that you are ignoring me. Please let me know when you can talk and let's talk then." |

65. In response to this last email, Morgado alleged that "the clerk" (although it is unclear whether he was referring to the clerk in federal court or in Mr. Ruszkowski's state court case) was delaying progress:

| | |
|---|---|
| July 18, 2017 | Email from Morgado to Ruszkowski (Exhibit 15):<br><br>"The clerk is taking too long for my liking and I know you are anxious about progressing the state cases to a close so when I get out of court today I plan, if my research bears out the way I believe it will to prepare a temporary injunction to be filed with the federal court. The point of this will be to cease and stop any and all state court actions. I believe this will give you the relief you seek. How's everything else going with you and your family?"<br><br>Ruszkowski responded:<br><br>"Thanks for the email and yes, a temporary injunction sound like a very good solution and will provide the relief we are seeking. We are not usually involved in these kinds of things so any threatening-sounding document tends to set off alarms for us. What were you trying to get from the clerk? Was it something else?<br>Please let me know when you have a draft of the temporary injunction and how it works to get it implemented." |

66.     Morgado never explained what he was waiting for from "the clerk," never sent Mr. Ruszkowski an injunction, and never filed an injunction or any motion to consolidate the cases.

67.     Despite the fact that he was not going to and did not file any sort of injunction, Morgado continued to make misleading statements to Mr. Ruszkowski:

| July 21, 2017 | Email from Morgado to Ruszkowski (Exhibit 16)

"Less[sic] you think I forgot about you, I did not. I am making a few final edits, as is my normal process. I can't submit something subpar (there's the control freak in me), plus in the evening … after the children are in bed, along with early morning… before aware, and before the phone calls begin and emails start flying etc. …. Well that is the best time research and write)[sic]."

Ruszkowski responded:

"Appreciate the heads up. Let me know if I can help." |
| --- | --- |
| July 23, 2017 | Email from Ruszkowski to Morgado (Exhibit 17)

"Am I able to see a draft of the injunction even if it is not filed yet? As we discussed, I still have anxiety over this." |
| July 24, 2017 | Email from Morgado to Ruszkowski (Exhibit 16)

"…and while the motion is good, I do have some other things that you can help out on."

Ruszkowski responded:

"Great, can you send me the motion? Is it filed?" |
| July 24, 2017 | Email from Ruszkowski to Morgado (Exhibit 17)

"I am feeling sick with anxiety. What is the status of this? Has the injunction been filed? If so, please send it to me. This has gone on way to[o] long and I need to get this put to bed. Please call me asap." |

68.    In email correspondence the next day, Morgado explained that he had continued the July 27th hearing date in Mr. Ruszkowski's Illinois state case. It is unclear how Morgado could have continued this case without filing an appearance on behalf of Mr. Ruszkowski or being

licensed to practice in Illinois. It appears that he contacted counsel for the City of Stamford and requested the continuance without any appearance being filed.

| July 25, 2017 | Email from Ruszkowski to Morgado (Exhibit 18) |
|---|---|
| | "Let me know what you need my help on and please do send the injunction ASAP. You said you would send that as soon as it was done." |
| | Morgado responded: |
| | "I have some excellent news for you. The July 27, 2017 scheduled event for you has been officially put off. I told you not to worry." |
| | Ruszkowski replied: |
| | "That is great news Dale, I am certainly very happy to hear about that. I would be interested in some of the details, such as what was the cause of the delay (was it the injunction, something else), will it happen in the future, what is the status of Dana's and Jill's situations, etc.? Hopefully the injunction has been put into place and will protect all of us from any action at the state level, but let me know whether that is true or not." |
| July 25, 2017 | Email from Morgado to Ruszkowski (Exhibit 19) |
| | "Rob, I am glad I was able to get the 7/27/17 examination putoff[sic] for you. Now that the immediate issue has been resolved, I finally got around to billing at least February. Accordingly, I was wondering if you could send a wire in for February's bill. Thanks so much. I look forward to catching up with you this week so I can answer any additional questions you might have." |

69.     Morgado's negligent conduct was not limited to Mr. Ruszkowski's State Case. Morgado's conduct of not responding to Plaintiffs' questions, providing misleading information, and failing to actually represent his clients in the State Cases affected each of the Plaintiffs.

17

70. Dr. Griffith became so frustrated with the lack of communication and the lack of resolution that she filed a motion for a continuance herself. Although an arrest warrant was not issued for Dr. Griffith, as of this filing, a sheriff auction of her home is being threatened as part of post-judgment proceedings.

71. Eventually, contempt orders and arrest warrants were issued against Mr. Ruszkowski and Ms. King.

72. Morgado did not disclose that arrest warrants had been issued against these two Plaintiffs. Instead, Ms. King learned about it when she called the court on another matter.

| November 15, 2017 | Email from Ruszkowski to Morgado (Exhibit 20)<br><br>"Jill said the court told her there is an arrest warrant out for her? What is going on?<br>Am I in the same boat? We all assume you are taking care of things on our behalf and the difficulty in getting in touch with you is to manage legal costs. I think it is fair to say that we all need a comprehensive update immediately. When can we do this?" |
| --- | --- |
| November 20, 2017 | Email from Ruszkowski to Morgado (Exhibit 21)<br><br>"Please let me know if there is a time in the near future we can catch up. Jill contacted the court on another matter (her divorce) and they told her there was an arrest warrant outstanding for her associated with this case. They said she can be taken to jail if she is pulled over for a traffic stop, etc. We really need to figure out what is going on ASAP." |
| November 21, 2017 | Email from Ruszkowski to Morgado (Exhibit 21)<br><br>"Please let me know if there is time for a call. It would really be good to do this before thanksgiving." |

73. When Morgado finally responded, he misleadingly stated that he was in communications with opposing counsel regarding settling the federal case, *even though that case had been dismissed two months before*:

| November 23, 2017 | Email from Morgado to Ruszkowski (Exhibit 22) |
|---|---|
| | "Good afternoon Robert, and A Happy Thanksgiving to you and your family. I'm sorry we didn't get to touch base last week, but I spoke with opposing counsel and they informed me they are recommending that their client give more consideration to settling the case, and that they are recommending an increase in settlement monies from the level we discussed. However, I don't know how much of an increase … so the devil will be in the details. Hopefully opposing counsel will hear from their client soon and they can pass on their formal offer." |

74. The impetus for the contempt orders and arrest warrants was Plaintiffs' failure to appear or respond in the post-judgment proceedings. Plaintiff's failure to appear in the post-judgment proceedings was solely caused by Morgado's continued representations that Plaintiffs did not need to appear and that he was resolving their cases.

75. This course of conduct—Morgado not responding to Plaintiffs' questions, providing misleading information, and failing to actually represent Plaintiffs in the State Cases—continued, even after arrest warrants had been issued against the Mr. Ruszkowski and Ms. King.

76. After Ms. King found out at an arrest warrant had been issued for her by calling the court on another case, she repeatedly expressed her concern over having an arrest warrant issued against her and needing to have it resolved as soon as possible. Morgado responded that having a warrant out for her arrest while traveling, "it will not be an issue." He further falsely stated that he was representing her in the Colorado case and that he had already raised the issue of her arrest warrant: "I know I have a hearing coming up in your case soon. In an abundance of caution, I

would raise the issue again." Morgado had never appeared in this case and certainly did not appear

for a hearing and raise any objection to the arrest warrant.

| January 11, 2018 | Email from King to Morgado (Exhibit 23)<br><br>"Hi Dale – can we please try to reschedule this call asap . . . and also I am really panicked about the arrest warrant situation." |
|---|---|
| January 17, 2018 | Email from King to Morgado (Exhibit 23)<br><br>"Hi Dale – want to check back on this. Has become more urgent because my job wants me to travel again next month, and I don't know if I can get through airport security with an arrest warrant outstanding." |
| January 24, 2018 | Email from Morgado to King (Exhibit 24)<br><br>"Come to think of it . . . it is probably for the best we talk tomorrow though ... I am tired for one . . . but more importantly, I want to be able to properly confer with you, have your case file in front of me etc... I want to be able to go over the various court filings with you etc... and give you to a reasonable time in the day so you can review and ask any questions you might have, without feeling rushed or nodding off to sleep. Plus, if I'm at my office, as opposed to my car or court, I can always quickly fire up a screen sharing session where we can go over and interact with the documents live etc. …<br><br>But to answer your most pressing question about travel; it will not be an issue. In fact, I know I have a hearing coming up in your case soon. In an abundance of caution, I would raise the issue again ... you can be present ... and I'll then move the court (judge) for an ore tenus order stating your[sic] are under no travel restriction and that no warrant is in effect etc. . . . That way you have clarity and peace of mind." |

77.    The deception continued when Morgado emailed Ms. King the next day, stating: "I

just hung up with Judicial Assistant," apparently referring the judge in Colorado's assistant and

stating that he had moved the date of her hearing and needed money to book his plane flight to Colorado to attend that hearing. January 26, 2018 Email, attached hereto as Exhibit 25.

78.    Morgado requested and was paid money for a trip he never took to represent Ms. King at a hearing that was not scheduled. When Ms. King requested to pay for the plane ticket directly with a credit card, Morgado ignored her request for days until Ms. King thought it was getting too late to purchase the tickets and had funds wired to Morgado instead. January 2018 Emails, attached hereto as Exhibit 26. No one except for Morgado knows what was done with these funds, as he did not purchase a plane ticket to attend a hearing on behalf of Ms. King.

79.    Based on Morgado's representations, Ms. King believed that he was working to resolve the arrest warrant in early 2018.

80.    Months later, Ms. King called the court to determine if the arrest warrant had been vacated or quashed and when she found it had not been resolved, she immediately expressed her surprise and concern to Morgado:

| April 25, 2018 | Email from King to Morgado (Exhibit 27) |
| | |
| | "I've just called the Denver County courthouse to check on the status of the arrest warrant. They have told me that it is still outstanding. What can we do about this, asap? I am traveling for work in a couple of weeks and I am very nervous about going through airport security. This is the first time that I will have traveled since the warrant was issued, and I cannot postpone this trip anymore." |

81.    Despite the fact that Ms. King sent this urgent email to two email addresses for Morgado, he never responded.

82.    Morgado continued to not respond to Plaintiffs' inquiries and concerns until Plaintiffs learned on May 3, 2018 that Morgado's New York law license had been suspended.

83.     Upon learning this information, Plaintiffs diligently contacted new counsel. The undersigned attorneys discovered that arrest warrants had also been issued for Mr. Ruszkowski. New counsel then filed emergency motions to quash and vacate the arrest warrants and petitions to set aside the default judgments. The petitions to set aside the default judgment are pending as of the day of this filing.

### License Suspensions

84.     Morgado's license to practice law in New York was suspended as of January 30, 2018 for similar behavior, including failures to represent clients, failures to communicate with clients, and his own failure to appear for disciplinary proceedings. *Matter of Morgado*, 2018 NY Slip Op 00535, ¶ 2, 159 A.D.3d 50, 53, 70 N.Y.S.3d 12, 14 (App. Div.), attached as Exhibit 28. As that opinion notes, Mr. Morgado even failed to respond to emails from the Attorney Grievance Committee. *Id.*

85.     Morgado's license to practice law in Florida was suspended as of July 12, 2018. The Petition for Emergency suspension includes affidavits from three former clients, which allege that Morgado kept settlement funds belonging to his client, agreed to settlements without client permission, and even forged his client's signature on a settlement check. Florida Petition for Emergency Suspension and corresponding Order, attached hereto as Exhibit 29.

86.     Morgado's license to practice law in Connecticut was suspended as of July 25, 2018.

## ETHICAL STANDARDS

87.     Because there are similar ethical rules in Illinois, North Carolina, Colorado, and each of the states that Morgado was actually licensed to practice in, the following are examples of some of the ethical standards that Morgado breached in Illinois:

88.     **RULE 1.3: DILIGENCE**

A lawyer shall act with reasonable diligence and promptness in representing a client.

89.     **RULE 1.4: COMMUNICATION**

(a) A lawyer shall:

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

90.     **RULE 5.5: UNAUTHORIZED PRACTICE OF LAW; MULTIJURISDICTIONAL PRACTICE OF LAW**

(a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

(b) A lawyer who is not admitted to practice in this jurisdiction shall not:

(1) except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or

(2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

91.     **RULE 7.1: COMMUNICATIONS CONCERNING A LAWYER'S SERVICES**

A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading.

## COUNT I – NEGLIGENCE

92.     Plaintiffs fully restate and reallege paragraphs 1 through 91 of this Complaint as if fully restated herein.

### Duty

93.     Plaintiffs and Morgado signed an engagement letter on October 2016, in which Morgado agreed to represent Plaintiffs' "interests relating to certain pension monies they received as beneficiaries to their mother's pension with the City of Stamford." Exhibit 30.

94.     Once he agreed to be Plaintiffs' attorney, Morgado became their fiduciary and owed each Plaintiff a duty of candor, care, loyalty, and good faith.

95.     Additionally, he agreed to represent Plaintiffs pursuant to the applicable ethical rules.

### Breach

96.     Morgado breached his ethical and fiduciary duties that he owed to Plaintiffs in the federal case when he:

(a)     Failed to serve all defendants within ninety days, which directly and proximately caused an order to show cause to be entered;

(b)     Failed to confer with defendants for FRCP 26(f) conferences, which directly and proximately caused an order to show cause to be entered;

(c)     Failed to appear for the pretrial conference, which directly and proximately caused an order to show cause to be entered;

(d)     Failed to tell Plaintiffs that an order to show cause had been filed;

(e)     Responded to the order to show cause alleging that he was dealing with health issues, even though he never disclosed any health issues to Plaintiffs;

(f)     Failed to respond to the Board of Trustees' motion to dismiss, which directly and proximately cause the complaint to be dismissed;

(g)     Failed to inform his clients that their complaint had been dismissed; and

(h)    Falsely represented that he was still negotiating a settlement with the City of Stamford two months after the federal case had been dismissed.

97.    Morgado breached his ethical and fiduciary duties that he owed to Plaintiffs in the State Cases case when he:

(a)    Failed to inform Plaintiffs that he was not licensed to practice in Illinois, North Carolina, or Colorado;

(b)    Falsely represented to Plaintiffs that he could represent them in each of their State Court cases;

(c)    Failed to inform Plaintiffs that they needed to hire local counsel;

(d)    Failed to file an appearance in any of the State Court cases;

(e)    Falsely represented that he did file appearances in each of the State Court cases;

(f)    Billed Plaintiffs for appearance fees in each State Case, even though he never filed an appearance;

(g)    Failed to respond to the complaints filed by the City of Stamford on behalf of each of the Plaintiffs;

(h)    Falsely represented that Plaintiffs did not need to appear in response to the complaints;

(i)    Failed to tell Plaintiffs that motions for default judgment had been filed;

(j)    Failed to respond to the motions for default judgment;

(k)    Falsely represented that he was attempting to consolidate the State Court cases into the federal action;

(l)    Falsely represented that he had filed an injunction or motion to consolidate the State Court cases into the federal action;

(m)    Failed to tell Plaintiffs that default judgments had been entered against them;

(n)    Failed to file appeals or petitions to set aside the default judgments;

(o)    Falsely represented that Plaintiffs did not need to appear in response to the default judgments;

(p)    Failed to determine if contempt orders or arrest warrants had been issued against Plaintiffs;

(q)     Failed to tell Plaintiffs that arrest warrants and contempt orders had been issued against them;

(r)     Failed to file any motion or petition to quash the arrest warrants; and

(s)     Falsely represented that Plaintiffs did not need to appear or respond to the arrest warrants and contempt orders.

### Causation

98.     The aforementioned negligent conduct breached Morgado's duties to Plaintiffs and was the direct and proximate cause of Plaintiffs' damages.

99.     The fact that Morgado (i) failed to serve all defendants within ninety days, (ii) failed to confer with defendants for Federal Rule of Civil Procedure 26(f) conferences, and (iii) failed to appear for the pretrial conference, directly and proximately caused an order to show cause to be entered.

100.    The fact that Morgado failed to respond to the Board of Trustees' motion to dismiss, even after the Court unilaterally provided an extension, directly and proximately caused the Complaint to be dismissed as to the Board of Trustees.

101.    But for Morgado's conduct that lead to the order to show cause, his continued failure to follow the court's instruction or appear for hearings, and his failure to respond to the Board of Trustees' motion to dismiss, the court would not have dismissed the claims against the City of Stamford as well.

102.    But for Morgado's negligent conduct in the federal case, Plaintiffs had evidence to support their claim for a declaratory judgment and would have prevailed.

103.    But for Morgado's negligent representation that he would file appearance and represent Plaintiffs in each of the State Cases, Plaintiffs would have hired local counsel.

104.    But for Morgado's false representation that he was moving to consolidate the State Cases into the federal action and the negligent instruction that they did not need to appear in

response to the State Case complaints, Plaintiffs would have appeared and defended against these claims and default judgments would not have been entered.

105.    But for Morgado's negligent conduct, Plaintiffs had evidence to support their defense against the State Case claims and would have prevailed.

106.    But for Morgado's false representation that he was moving to consolidate the State Cases into the federal action and negligent instruction that they did not need to appear in response to the default judgment, Plaintiff would have appeared and appealed the default judgment immediately.

107.    But for Morgado's false representation that he was moving to consolidate the State Cases into the federal action and negligent instruction that they did not need to appear in response to the post-judgment proceedings, Plaintiffs would have appeared and there would have been no basis to enter contempt orders or arrest warrants.

108.    But for Morgado's negligent conduct in both the federal and court cases, Plaintiffs would not have been required to hire and pay new counsel to move to quash arrest warrants and contempt orders, petition to set aside the default judgments, and move to restrain a sheriff's auction of one of the Plaintiff's homes.

**Damages**

109.    As a direct and proximate cause of Morgado's negligent conduct, Plaintiffs have suffered damages in excess of $100,000.

**CONCLUSION**

WHEREFORE, Plaintiffs ROBERT LEE RUSZKOWSKI, JR., DANA RENEE GRIFFITH, and JILL KATHLEEN KING respectfully request that the Court enter judgment in their favor against DALE JAMES MORGADO and grant them the following relief:

A.    Damages in an amount in excess of $100,000;

B.    Attorneys' fees;

C.    Any applicable pre-and post-judgment interests and costs; and

D.    Such further relief as the Court deems proper and just.


August 22, 2018                              Respectfully Submitted,

                                             s/ Dara C. Tarkowski
                                             Dara C. Tarkowski
                                             Andrea C. Halverson
                                             ACTUATE LAW, LLC
                                             641 W. Lake Street
                                             Chicago, IL 60661
                                             (312) 579-3108
                                             dara.tarkowski@actuatelaw.com
                                             andrea.halverson@actuatelaw.com

                                             *Attorneys for Plaintiffs*